IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| SIRONA DENTAL SYSTEMS, INC. and CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>Plaintiffs,<br><br>v.<br><br>DENTAL IMAGING TECHNOLOGIES CORPORATION,<br><br>Defendant. | Civil Action No. 10-288-GMS |

## MEMORANDUM

### I. INTRODUCTION AND BACKGROUND

On April 9, 2010 Sirona Dental Systems, Inc. ("Sirona") and California Institute of Technology ("Caltech") initiated this patent infringement suit. (D.I. 1.) On June 23, 2011 the court approved a stipulated agreement establishing September 1, 2011 as the deadline to "amend pleadings or join parties." (D.I. 85.) On May 29, 2012, the court entered another stipulated agreement, permitting the plaintiffs to file a Fourth Amended Complaint (the "Amended Complaint") that same day despite the passage of the amendment deadline almost nine months earlier. (D.I. 165.)

The Amended Complaint (D.I. 166) was made necessary by three events that occurred after the September deadline. First, the Amended Complaint replaced defendants DEXIS LLC

1

and Gendex Corporation with their successor entity, Dental Imaging Technologies Corporation ("DITC"), reflecting the result of "a series of mergers ultimately completed on January 25, 2012." (D.I. 165 at 2; D.I. 166 at ¶ 5.) The Amended Complaint also removed DITC's parent company, Danaher Corporation, as a defendant pursuant to an agreement reached between the parties. (D.I. 165 at 2.) Finally, the Amended Complaint "substitute[d] the reissues of two of the patents in suit for the original patents," as a result of the USPTO's November 2011 reissuance. (D.I. 166 at ¶¶ 9–10.) There were no substantive changes made to the plaintiff's claims, and "[t]he reissued patents were substantially identical to the original patents." (D.I. 174 at 2.) On June 15, 2012, DITC filed its Answer to the Amended Complaint (the "Answer"), for the first time raising an affirmative defense of "unclean hands." (D.I. 168 at ¶¶ 64–65.)

Presently before the court is the plaintiffs' motion to strike DITC's unclean hands defense as untimely or insufficient. For the reasons that follow, the court will grant this motion and strike the defense.

## II. DISCUSSION

The parties devote much of their briefing to a debate over which provision of the Federal Rules of Civil Procedure governs the substance, timing, and propriety of DITC's Answer. The court will address each of these Rules in turn.

A. Rule 16(b)

The plaintiffs first argue that, because there is a scheduling order in place, Federal Rule of Civil Procedure 16(b) offers the appropriate standard for examining the Answer. (D.I. 174 at 5.) Rule 16(b) instructs the court to "issue a scheduling order" and proclaims that, once issued, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). Thus, the plaintiffs contend that DITC was required to both obtain leave from this

court and demonstrate good cause before filing an amended answer. (D.I. 174 at 5.) DITC responds that Rule 16 and the scheduling order are inapplicable where a party seeks not to amend its own earlier pleading but seeks only to respond to the opposition party's amended pleading—here, the Answer is "DITC's *original* answer to [the Amended Complaint]" and is not itself an "*amended* pleading" in the ordinary sense. (D.I. 183 at 5.)

It seems, however, that DITC misunderstands the plaintiffs' argument regarding the Rule 16(b) standard. Sirona and Caltech appear to recognize that the Answer is not itself an amended pleading—they simply argue that the court must treat it as such.[1] That is, the plaintiffs contend that the Answer is not a proper response to the Amended Complaint under Rule 15(a),[2] and therefore must be viewed instead as a stand-alone amended pleading. If treated as an independent amended pleading, the plaintiffs insist it would also fail to meet the requirements of Rule 16(b).

Assuming this is, in fact, the argument being advanced by Sirona and Caltech, the court has no reason to engage in the Rule 16(b) analysis at this early stage. Rather, the court will turn to the foundational inquiry of whether DITC's Answer represents a proper responsive pleading under Rule 15(a). If the Answer is an inappropriate response, further examination of the plaintiffs' Rule 16(b) argument may be needed; if the Answer is permitted by Rule 15(a), no further inquiry will be necessary.

B. Rule 15(a)

Much of the parties' disagreement centers on the proper interpretation of Federal Rule of Civil Procedure 15(a)(3), which provides that "[u]nless the court orders otherwise, any required

---

[1] Though Sirona and Caltech do not make this distinction clear, this argument seems to be implicit in Plaintiff's Reply Brief. (*See* D.I. 196 at 1.)

[2] *See infra* Part III.B.

3

response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3). While this language appears relatively straightforward, Sirona and Caltech argue that, under the "majority view," the scope of Rule 15(a)(3) responsive pleadings should be limited to reflect the breadth of the changes in the initial amended pleading. (D.I. 174 at 5.) The plaintiffs claim that any additions in DITC's Answer should have been tailored to address only the changes made in the Amended Complaint. (*Id.* at 6.)

DITC responds that judges in this district have permitted more expansive responses to amended complaints. (D.I. 185 at 5.) The court is asked to follow these other Delaware decisions and, in doing so, adopt what the plaintiffs have described as the "minority view"—the position that an amended pleading invites an entirely new response regardless of how limited the changes were in that amended pleading. (*See id.* at 5–6.) On the other hand, the plaintiffs' position is that the court should take the "majority view," "splitting" from other judges in this district. (D.I. 194 at 3.)

The court, however, is not required to address the proper scope of a Rule 15(a)(3) response today[3]—for the reasons that follow, the court believes that DITC's Answer is best

---

[3] Though the court need not resolve this issue to reach its holding, it notes that several factors weigh in favor of the plaintiffs' position. First, the plaintiffs correctly observe that there is no "law of the district," countering DITC's implicit suggestion that these other Delaware decisions somehow bind this court. Additionally, the court is impressed by the weight of authority, from both judges and commentators, declining to endorse an interpretation of Rule 15(a)(3) that would throw the door open to entirely new claims and defenses each time a ministerial amendment was made to a pleading. *See, e.g., Elite Entm't, Inc. v. Khela Bros. Entm't*, 227 F.R.D. 444, 446 (E.D. Va. 2005) ("[T]he moderate, and most sensible, view is that an amended response may be filed without leave only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint."); *E.E.O.C. v. Morgan Stanley & Co., Inc.*, 211 F.R.D. 225, 227 (S.D.N.Y. 2002) ("If every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would

4

understood not as a "required response to an amended pleading" under Rule 15(a)(3) but as a discretionary response to a "supplemental pleading," governed by Rule 15(d).

C. Rule 15(d)

The plaintiffs argue in their Reply Brief that the Amended Complaint should be viewed as a "supplemental pleading" under Rule 15(d). (*Id.* at 2.) This Rule provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). Significantly, if the Amended Complaint is viewed as a supplemental pleading, DITC's Answer is merely a response to a supplemental pleading that "[t]he court *may* order [DITC] to plead within a specified time." *Id.* (emphasis added). Unlike responses to amended pleadings under Rule 15(a)(3), responses to supplemental pleadings are not permitted as a matter of course. *Compare* 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.17[5] (3d ed. 2012) ("[A] court may not deprive an affected party of the right to file a response to an amended pleading if the party so desires . . . ."), *with Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1189 (3d Cir. 1979) ("Under Fed.R.Civ.P. 15(d), the trial court determines whether a responsive pleading is advisable . . . ."). If the Answer should be characterized as a response to a supplemental pleading, it is therefore within this court's discretion to permit or

---

otherwise be barred or precluded could be revived without cause. This would deprive the Court of its ability to effectively manage the litigation."); *see also* 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.17[6] (3d ed. 2012) ("Normally, a party served with an amended pleading has the duty and the right only to 'respond' to the amendment or the changes in the amended pleading. Service of an amended pleading does not automatically re-open the time for asserting matters that should have been asserted in response to the original pleading."). Considerations of judicial efficiency and fair play counsel against the "minority view."

5

disallow DITC's unclean hands defense.

The court, however, must first determine whether the plaintiff's Amended Complaint is, in fact, best understood as a supplemental pleading. The Third Circuit's decision in *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185 (3d Cir. 1979), is particularly instructive on this point, as that case presented a similar procedural scenario. The plaintiff, Owens-Illinois, sought a declaratory judgment that a valid option agreement for the purchase of certain real property existed between the parties. *Id.* at 1187. When it became clear that the matter would not be resolved before the option purchase date passed, Owens-Illinois requested and was granted leave to file an amended complaint, adding a request for specific performance, so that the land might still be conveyed should Owens-Illinois eventually prevail. *See id.* The defendant, Lake Shore Land Co., took this opportunity to file an answer to the amended complaint, including a new counterclaim for breach of the underlying lease agreement. *Id.* The district court then dismissed this counterclaim. *Id.*

Lake Shore Land Co. argued that it was entitled to respond to the amended complaint as a matter of course under Rule 15(a) and that its response could raise issues even beyond the scope of the amendment.[4] *Id.* at 1188. The Third Circuit, however, found that Rule 15(a) was not controlling; Owens-Illinois' "amended complaint" was actually a "supplemental pleading," since it "refer[red] to events that occurred after the original pleading was filed" rather than to "matters that occurred before the filing of the original pleading but were overlooked at the time." *Id.* When the amended complaint was properly viewed as a supplemental pleading, it became clear

---

[4] Lake Shore Land Co. relied on *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415 (D. Del. 1970), for this point—the same case at the heart of the line of Delaware decisions that DITC urges the court to follow. *See Owens-Illinois*, 610 F.2d at 1188. Like the Third Circuit in *Owens-Illinois*, however, this court finds that Rule 15(a) is not controlling here.

6

that disallowing Lake Shore Land Co.'s response was within the district court's discretion under Rule 15(d). *See id.*

Here, as in *Owens-Illinois*, the plaintiff's Amended Complaint references "events that occurred *after* the original pleading was filed," *id.* (emphasis added), namely the merger of the defendants, the reissue of two of the patents in suit, and the agreement between the parties to remove DITC's parent company from this litigation. Additionally, it is well-accepted that a supplemental complaint may be used to add parties, such as DITC, to ongoing litigation. *See Griffin v. Cnty. Sch. Bd.*, 377 U.S. 218, 227 (1964). For these reasons, the Amended Complaint is more properly characterized as a supplemental pleading under Rule 15(d), rendering DITC's Answer a response to a supplemental pleading. As noted above, it therefore is fully within this court's discretion to permit or disallow the unclean hands defense embedded in the Answer.

The court does not find it "advisable" to permit DITC's new unclean hands defense to go forward at this stage. The same efficiency considerations underlying the "majority view" of Rule 15(a) recommend this conclusion, and the court is particularly concerned about its ability to manage litigation should it routinely allow such untimely defenses to proceed. The filing of a supplemental complaint containing purely ministerial changes should not permit an opposing party to raise a novel affirmative defense more than nine months after a scheduling order deadline.

D. Rule 16(b) Revisited

The court's inquiry, however, is not yet complete. As suggested above, the court finally must consider whether DITC's Answer should be allowed to proceed in its entirety as a stand-alone amended pleading rather than as a responsive pleading. As Sirona and Caltech point out, there is a scheduling order in place, and Rule 16(b) therefore provides the proper standard for

7

assessing an independent amended pleading. *See ICU Med., Inc. v. Rymed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009) ("If a party moves for leave to amend the pleadings after a deadline imposed by a Scheduling Order, Rule 16 of the Federal Rules of Civil Procedure is also implicated . . . After a pleading deadline has passed, the Third Circuit requires a showing of good cause in order to amend."); *see also* 3 James Wm. Moore et al., *Moore's Federal Practice* § 16.14 (3d ed. 2012) ("When a party seeks to amend a pleading after the deadline set in the scheduling order, thereby necessitating amendment of the scheduling order as well, several circuits have applied Rule 16(b)'s 'good cause' standard rather than the more lenient standard of Rule 15(a) . . . ."). Rule 16(b) instructs the court to "issue a scheduling order" and provides that, once issued, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). Under this provision, "'[g]ood cause' exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension," *ICU Med.*, 674 F. Supp. 2d at 577 (citing Fed. R. Civ. P. 16(b)(4), Advisory Committee's Notes (1983 amendments)), and, "[i]n contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party," *id.* at 577–78 (quoting *Freres v. SPI Pharma, Inc.*, 2009 U.S. Dist. LEXIS 43740, at *13 (D. Del. May 21, 2009).

Applying this standard, the court finds that the Answer, recast as an amended pleading, fails to comport with the requirements of Rule 16(b)(4). As an initial matter, DITC did not obtain leave from the court prior to filing its Answer and thereby failed to satisfy the "judge's consent" prong of the Rule. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause *and with the judge's consent*." (emphasis added)). Additionally, DITC has failed to show "good cause" for its delay in raising the unclean hands defense.

8

On this latter point, the plaintiffs point to several documents suggesting that DITC was aware of the facts giving rise to its unclean hands defense no later than early May 2011 and thus could have complied with the scheduling order's September 2011 deadline. (D.I. 174 at 7.) DITC counters that the plaintiffs provided inconsistent information with regard to the facts relevant to the unclean hands issue. (D.I. 183 at 8–9.) Specifically, DITC points to several interrogatory responses that, taken together, might be interpreted as denying the very facts that DITC now claims underlie its defense. (D.I. 183 at 9.) In DITC's view, this denial sufficiently muddied the waters of discovery so as to excuse its delay in ferreting out the information on which it now bases its unclean hands defense.[5] (*See id.*) This argument might be convincing if it were not for the fact that one of these key interrogatory responses was made on January 23, 2012, almost five months after the September 1, 2011 amendment deadline. (*See id.*) DITC cannot reasonably argue that an allegedly misleading disclosure that it received *after* the deadline prevented it from raising an unclean hands defense *before* the deadline.

DITC also relies on a provision in the license agreement between the plaintiffs. The court is told that, if the facts underlying its unclean hands defense are true, then Caltech "would be consciously consenting to a blatant breach of the licensing agreement" by Sirona and willfully violating the federal law upon which DITC bases its unclean hands claim. (*Id.*) It is apparently DITC's contention that the failure to investigate its defense earlier should be excused by its assumption that the plaintiffs would adhere to their license agreement and federal law. The court does not find this argument particularly persuasive—a party seeking to add a late defense of unclean hands cannot cure its delay by arguing that it was entitled to presume its opposition's

---

[5] DITC never directly addresses the documents that the plaintiffs claim put DITC on notice by May 2011. Rather, DITC's argument seems to be that the plaintiff's subsequent disclosures confused matters sufficiently to "remove" any such notice.

9

hands were, in fact, clean. Certainly, some forms of misconduct might be so outrageous as to justify an adversary's initial assumption that the misconduct has not occurred. This assumption, however, must fall away when a party is presented with evidence of potential bad deeds, and it surely cannot excuse an adversary from diligent investigation upon receipt of such evidence. DITC's reasoning would open the door to untimely defenses and claims whenever they are based on some form of misbehavior.

Finally, DITC acknowledges that it learned of the relevant facts in February of 2012 at the very latest. DITC failed, however, to plead its unclean hands defense until it filed its Answer on June 15, 2012, nearly four months later. Regardless of whether this delay was driven by a mistaken belief that DITC eventually would be able to respond to the Amended Complaint as a matter of course, such dilatory behavior is inconsistent with the diligence requirement of Rule 16(b).

DITC neither requested the court's leave to file an amended pleading nor can it demonstrate good cause for its delay in raising its new defense. As such, the Answer cannot survive as a stand-alone amended pleading under Rule 16(b).

## III. CONCLUSION

For the foregoing reasons, the court finds that DITC's Answer is neither a proper responsive pleading under Rule 15(d)—at least insofar as it contains the defendant's unclean hands defense—nor a timely independent amended pleading under Rules 15(a) and 16(b). Accordingly, the court will grant the plaintiffs' motion to strike ¶¶ 64–65 of the Answer, DITC's seventh affirmative defense for unclean hands. The court will permit the rest of the Answer to

remain as a responsive pleading to plaintiffs' Rule 15(d) supplemental Amended Complaint.[6]

The court will not address the merits of DITC's unclean hands defense at this time.

Dated: September 10, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The court will allow the Answer's new eighth affirmative defense, (D.I. 168 at ¶ 66), as the plaintiffs have not challenged that defense at this time, (D.I. 174 at 4), and because it appears to have been occasioned by events that also occurred well after the scheduling order deadline.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| SIRONA DENTAL SYSTEMS, INC. and CALIFORNIA INSTITUTE OF TECHNOLOGY, )<br><br>Plaintiffs,<br><br>v.<br><br>DENTAL IMAGING TECHNOLOGIES CORPORATION,<br><br>Defendant. | Civil Action No. 10-288-GMS |

**ORDER**

At Wilmington this 10th day of September 2012, consistent with the memorandum opinion issued this same date, IT IS HEREBY ORDERED that:

1. The plaintiff's Motion to Strike Defendant's Seventh Affirmative Defense (D.I. 173) be GRANTED.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

12